IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RICHARD HOEFT,

        Plaintiff,       OPINION AND ORDER

  v.

                   09-cv-138-wmc[1]

TIM ANDERSON and
VICKI ARNDT,

        Defendants.

---

Pursuant to 42 U.S.C. § 1983, plaintiff Richard Hoeft brought claims that (1) defendant Vicki Arndt violated his Fourth Amendment rights by placing a probation hold on him without just cause; and (2) defendants Arndt and Timothy Anderson violated his Fifth Amendment rights in failing to provide *Miranda* warnings before interrogating him in the spring of 2003. On March 15, 2010, defendant Arndt filed a motion for summary judgment (dkt.#12) and defendant Anderson filed a motion for judgment on the pleadings (dkt. #20). Hoeft was given until April 14, 2010 to respond to either motion. Since he failed to do so, defendants' motions will now be granted.

Hoeft was informed in writing that if he did not put into dispute a fact proposed by the moving party, the court would deem the fact undisputed. "Procedure to be Followed on Motions for Summary Judgment" attached to the September 10, 2009, Preliminary Pretrial Conference Order, dkt. #9, at 18. This failure to respond is simply the latest in a series of

---

[1] This case was reassigned to Judge William Conley pursuant to a March 31, 2010 administrative order.

1

untimely submissions.  Accordingly, the court accepts as undisputed defendant Arndt's Proposed Findings of Fact.  Because the court is considering Anderson's affidavit submitted in support of defendant Arndt's motion for summary judgment (dkt. #15), Anderson's 12(b)(6) motion will also be treated as a motion for summary judgment pursuant to Fed. R. Civ. P. 12 (d).  Since plaintiff was given an opportunity to respond to the matters outside the pleadings and failed to do so, no genuine issue of material fact remains with regard to Hoeft's claims against Anderson.

Applying the undisputed facts, the court finds that defendant Arndt did not violate plaintiff's Fourth Amendment rights when she had him jailed on a probation hold.  While defendants Arndt and Anderson may have violated Hoeft's rights when they interrogated him without advising him of his *Miranda* rights, defendants are shielded from liability under the doctrine of qualified immunity because the right was not so clearly established at the time of the alleged violation that a reasonable law enforcement officer would have known that his or her actions were unconstitutional.

UNDISPUTED FACTS

**I.  Parties**

Plaintiff Richard Hoeft is an adult resident of Park Falls, Wisconsin.  At all times material to this action, defendant Victoria Arndt was employed by the Wisconsin Department of Corrections Division of Community Corrections as a Probation and Parole Agent.  Defendant Timothy Anderson is an Officer with the United States Forest Service.

## II.  Probation Hold

In March 2003, defendant Arndt was acting as Hoeft's probation officer.  One of Hoeft's probation rules specified that he was required to "provide true and correct information verbally and in writing in response to inquiries by the agent."

On March 6, 2003, Arndt received a call from Pam Rusk of the Wisconsin Department of Agriculture, Trade and Consumer Protection.  She explained that Hoeft was not paying obligations on jobs he was contracting.  The next day, Rusk told Arndt that there were also numerous potential charges against Hoeft for lumber theft; she had contacted Hoeft while he was in the Price County jail; and she spoke with Hoeft about taking care of the issues though he had neglected to do so.  That same day, Arndt met with Hoeft and directed him to cooperate with Rusk.  Hoeft refused.  Because of his failure to cooperate, Arndt had him jailed on a probation hold on March 20, 2003.  On March 24, 2003, Hoeft provided a statement to Arndt and agreed to take care of the issues she outlined.

## III.  March Interrogation

Defendant Anderson started investigating a timber theft in Chequamegon/Nicolet National Forest in February 2003.  During that investigation, a worker helping with a federal timber sale identified Hoeft as the probable person responsible for the theft.

On March 25, 2003, Anderson called Arndt and asked to meet with Hoeft.  Arndt arranged the meeting.  Two days later, at Hoeft's weekly probation meeting, Hoeft gave a

written statement to Anderson regarding the February 2003 Chequamegon/Nicolet National Forest theft before receiving his *Miranda* warnings.  At the time he gave the written statement, Hoeft knew his *Miranda* rights.

In August 2003, Hoeft was charged with the Chequamegon/Nicolet National Forest theft that took place in February 2003. (W.D. Wis 3:02-mj-00086-slc-1.)  The case was ultimately dismissed without prejudice because of the unavailability of Arndt's testimony.

## IV.  April Interrogation

On April 8, 2003, Hoeft held a voluntary follow up meeting with defendant Anderson.  Hoeft was not read his *Miranda* warnings at this meeting either.  Although Arndt was not present, Hoeft spoke with her on the telephone during the meeting.  Ultimately, Hoeft provided Anderson a written statement regarding a timber theft in Ashland County. At the time he gave this statement, Hoeft knew his *Miranda* rights.  This statement was never suppressed in a criminal case.

## OPINION

Under Fed. R. Civ. P. 56, summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  In deciding a motion for summary judgment, the court must view all facts and draw all inferences from those facts in the light most favorable to the non-moving party.  *Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).  The party that bears the burden of

4

proof on a particular issue, nonetheless, may not rest on its pleadings, but must affirmatively demonstrate, through the proposal of specific facts, that there is a genuine issue of material fact that requires a trial. *Hunter v. Amin*, 583 F.3d 486, 489 (7th Cir. 2009) (internal quotation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The applicable substantive law will dictate which facts are material. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). Further, there is a "genuine" factual dispute only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Roger Whitmore's Auto. Serv., Inc. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The court's function in a summary judgment motion is not to weigh the evidence and determine the truth of the matter but to determine whether there are genuine issues for trial. *Anderson*, 477 U.S. at 249; *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). In this case, there are none.

## I. Fourth Amendment Claim

Hoeft claims that defendant Arndt violated his Fourth Amendment rights when she placed a probation hold on him from March 20 to March 24, 2003. The Fourth Amendment to the Constitution protects individuals against "unreasonable searches and seizures." Individuals on probation, however, are not entitled to the full protections of the Fourth Amendment accorded to free citizens. *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (probationers do not enjoy "'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation]

5

restrictions.'") (citing *Morrissey v. Brewer* , 408 U.S. 471, 480 (1972)); *see also United States v. Knights*, 534 U.S. 112 (2001).  The seizure of a probationer need not be supported by probable cause to pass constitutional muster.  In *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003), the Seventh Circuit stated the seizure of a parolee "based on only reasonable suspicion" that the parolee had violated a term of his mandatory supervised release agreement did not violate the Fourth Amendment.

It is undisputed that Arndt placed a probation hold on plaintiff because he was refusing to cooperate with an investigation by Patty Rusk of the Consumer Protection Agency.  Arndt directed Hoeft to answer Rusk's questions and he refused to do so.  This was a violation of his probation rule that he respond to all inquiries from his agent.  It was reasonable for Arndt to place a probation hold on Hoeft because of this violation.  As soon as Hoeft agreed to answer Rusk's questions, Arndt lifted the hold and released Hoeft from jail.  In holding Hoeft, Arndt did not violate his Fourth Amendment rights and no reasonable jury could find otherwise.

## II.  Fifth Amendment Claim

Hoeft's claims that Arndt and Anderson violated his Fifth Amendment rights requires greater discussion.[2]  He was interrogated by Anderson in the spring of 2003 without being advised of his *Miranda* rights.  In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that before police officers may interrogate a suspect who is in custody, they must

---

[2]  While it is not clear from the record whether Arndt was personally involved in the interrogations of Hoeft, for purposes of deciding these motions, the court will assume that she was.

inform the suspect of his right to remain silent and his right to an attorney.  That Hoeft was interrogated without being advised of his *Miranda* rights is undisputed.  In *Sornberger v. City of Knoxville, Illinois*, 434 F.3d 1006, 1026-1027 (7th Cir. 2006), the Seventh Circuit held that "where . . . a suspect's criminal prosecution was not only initiated, but was commenced because of her allegedly un-warned confession, the 'criminal case' contemplated by the Self-Incrimination Clause has begun."  *Id.*  The court of appeals concluded that the use of an un-warned confession to find probable cause, set bail and arraign "allows a suit for damages under § 1983."  *Id.* at 1027.

In this case, it is not clear whether the prosecutions against Hoeft were commenced based on his un-warned confession.  The court, however, will assume for purposes of this motion that Hoeft's constitutional rights were violated by defendants' failure to advise him of his rights.

Even assuming a violation of *Miranda*, both defendants nevertheless contend that they are entitled to judgment in their favor on grounds of qualified immunity. Government officials performing discretionary functions enjoy qualified immunity from suit to the extent that their conduct "could reasonably have been thought consistent with the rights they are alleged to have violated."  *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987).  A two-step analysis is employed to determine whether a defendant is entitled to this defense.  *Sornberger*, 434 F.3d at 1013.  The first step is determining whether a plaintiff has alleged a violation of a federal constitutional right.  *Id.* (citations omitted).  If such a violation did occur, the next step is determining whether the right was so clearly established at the time of the alleged violation that a reasonable officer would have known that his actions were

unconstitutional. *Id*. (citations omitted).

In 2003, it was not clear that a failure to give a *Miranda* warning itself was a violation of a constitutional right, as opposed to simply being a ground for excluding evidence obtained from a suspect in a criminal case before the warning was given. At the time of the alleged violation, no opinion from the Supreme Court or the Court of Appeals for the Seventh Circuit held that a failure to give a *Miranda* warning violated a person's constitutional rights. *Thornton v. Buchmann*, 392 F.2d 870, 874 (7th Cir. 1968). Indeed, courts in other circuits had explained that a failure to give a *Miranda* warning was not a constitutional violation. *See Jones v. Cannon*, 174 F.3d 1271, 1290-91 (11th Cir. 1999) ("failing to follow *Miranda*" does not create "a cause of action for money damages under section 1983"); *Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir. 1994) ("violations of prophylactic *Miranda* procedures do not amount to violations of the Constitution itself"); *Warren v. City of Lincoln*, 864 F.2d 1436, 1442 (8th Cir. 1989) (remedy "for a *Miranda* violation is the exclusion from evidence of any compelled self-incrimination, not a section 1983 action"); *Bennett v. Passic,* 545 F.2d 1260, 1263 (10th Cir. 1976); *but see Cooper v. Dupnik*, 963 F.2d 1220, 1237 (9th Cir. 1992) (recognizing claims under § 1983 arising from officers' intentional failure to give *Miranda* warnings).

Some courts have suggested the Supreme Court resolved any ambiguity as early as 2000 in *Dickerson v. United States*, 530 U.S. 428 (2000), in which the Court stated that *Miranda* announced a constitutional "rule." *See, e.g., United States v. Faulkingham*, 295 F.3d 85, 90 (1st Cir. 2001). *Dickerson* did not, however, hold that a violation of *Miranda* was a violation of the Fifth Amendment. 530 U.S. at 442. Instead, the Court declined the

invitation to "go farther than *Miranda*" and refused to say that "*Miranda* warnings are required by the Constitution." *Id.* In characterizing *Miranda* as a "constitutional rule," the majority in *Dickerson* was careful not to say that a *Miranda* warning was constitutionally required because several justices in the majority were "on record as believing that a violation of *Miranda* is *not* a violation of the Constitution." *Id.* at 445 (Scalia, J., dissenting).

In the absence of clear Supreme Court authority, a failure to give a *Miranda* warning was not clearly established as a constitutional violation until *Sornberger*, 434 F.3d at 1013, was decided in 2006. The *Sornberger* Court held that if a suspect's un-warned statement were used against him in a "criminal case," a *Miranda* violation was actionable under § 1983. *Id.* at 1024. Because it was not clearly established until 2006 that a failure to give a *Miranda* warning was a constitutional violation, defendants are entitled to qualified immunity for their alleged failure to give Hoeft a *Miranda* warning on March 27 and April 8, 2003, in violation of the Fifth Amendment claim.

## ORDER

IT IS ORDERED that:

(1)   The motions for summary judgment filed by defendants Vicki Arndt (dkt. #12) and Timothy Anderson (dkt. #20) are GRANTED.

(2)   The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 6th day of July, 2010.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

9